| | |
|---|---|
| THE CATHOLIC MUTUAL RELIEF SOCIETY OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ARROWOOD INDEMNITY COMPANY, f/k/a Royal Indemnity Company *and successor to Royal Indemnity Company, Connecticut Indemnity Company, The Fire & Casualty Insurance Company, Security Insurance Company Of Hartford, Connecticut Specialty Insurance Company, New Amsterdam Casualty Company, and Orion Capital Companies*,<br><br>Defendants. | Civil No. 17-3141 (JRT/LIB)<br><br>**MEMORANDUM OPINION AND ORDER DENYING MOTION TO DISMISS** |

Christopher L. Lynch, **BARNES & THORNBURG LLP**, 225 South Sixth Street, Suite 2800, Minneapolis, MN 55402, and Everett J. Cygal and Daniel J. Schufreider, **SCHIFF HARDIN LLP**, 233 South Wacker Drive, Suite 7100, Chicago, IL 60606, for plaintiff.

Robert D. Brownson, **BROWNSON NORBY, PLLC**, 225 South Sixth Street, Suite 4800, Minneapolis, MN 55402, for defendant.

This action arises out of a dispute between two insurers of the same insured party. The Catholic Mutual Relief Society of America ("Catholic Mutual") brought this case for declaratory judgment against Arrowood Indemnity Company ("Arrowood"). Catholic Mutual issued insurance coverage certificates to the Diocese of St. Cloud ("the Diocese")

and other parishes ("the Parishes") for periods during which they were also allegedly covered by policies issued by Arrowood's predecessor company. For decades, Arrowood's predecessor company acknowledged responsibility under those policies for sexual abuse claims filed against the Diocese and Parishes, despite the fact that the complete original polices could not be located. In 2011, however, Arrowood began denying claims under the same policies.

Catholic Mutual now seeks a judicial declaration that Arrowood is liable under its predecessor company's policies and therefore must defend and indemnify the Diocese against the sexual abuse claims covered by both insurers' policies. Catholic Mutual also seeks declaratory judgments regarding the terms of the policies and regarding a right of contribution from Arrowood for expenses incurred by Catholic Mutual in defending the Diocese. Arrowood seeks to dismiss this action pursuant to Federal Rule of Civil Procedure 12(b)(1). Because Catholic Mutual has alleged an actual case and controversy that is neither premature nor moot, the Court will deny Arrowood's Motion to Dismiss.

## BACKGROUND

### I. FACTUAL BACKGROUND

#### A. THE PARTIES

Plaintiff Catholic Mutual is a Nebraska non-profit corporation with its principal place of business in Nebraska. (Compl. ¶ 7, July 20, 2017, Docket No. 1.) Catholic Mutual "operates as a self-protection fund of the Catholic Church in the United States

and Canada" and "issues certificates of coverage to participating members, which provide the members with coverage for certain property and casualty risks." (*Id.*)

The Diocese is a Minnesota general business entity with its principal place of business in Minnesota. (*Id.* ¶ 11). From February 1971 to February 1990, Catholic Mutual issued certificates to the Diocese that "may provide coverage . . . for liability arising from acts of sexual abuse that took place during each certificate's coverage period." (*Id.* ¶ 19.) Catholic Mutual alleges that the Diocese was also covered under occurrence-based general liability insurance protection policies issued by the Security Insurance Company of Hartford ("Security") for injuries occurring from 1964 through 1971.[1] (*Id.* ¶ 1.) From at least 1990 to 2011, Security "stood by its insured and paid claims submitted by the Diocese." (Compl. ¶¶ 3, 30.) Security no longer exists, but its obligations are now managed by Defendant Arrowood, a Delaware corporation with its principal place of business in North Carolina. (*Id.* ¶ 8.)

Catholic Mutual alleges that Arrowood – a "run-off manager" – has aggressively managed its claims, requiring "exacting evidence of insurance coverage purchased over 50 years ago" and routinely denying claims filed against the Diocese, despite the fact that Security previously acknowledged responsibility under the same policies and agreed to pay claims under the same policies. (*Id.* ¶¶ 5-6.) Catholic Mutual alleges that, "starting in 2011, when it became clear that there was significant potential liability relating to

---

[1] Catholic Mutual alleges that several companies managed and/or administered claims under the Security Insurance Company of Hartford prior to Arrowood's management, but for simplification purposes refers to them all as "Security Insurance Company of Hartford." (Compl. ¶ 2.)

alleged sexual misconduct claims . . . [Arrowood] abandoned [the Diocese] and asserted defenses that [Security] waived long ago." (*Id.* ¶ 6.)

### B. THE UNDERLYING CLERGY SEXUAL ABUSE CLAIMS

Since the Minnesota Child Victims Act, Minn. Stat. § 541.073, became law, 75 actions ("the Underlying Claims") have been filed against the Diocese and the Parishes.[2] (*Id.* ¶¶ 13, 15.) The Underlying Claims allege sexual abuse by members of the clergy or other individuals associated with the Diocese and Parishes between 1948 and 1995 and allege that the Diocese continues to conceal important information about priests accused of abuse. (*Id.* ¶¶ 15-16.) The Underlying Claims allege public and private nuisance, negligence, negligent supervision, and negligent retention. (*Id.* ¶ 17.)

The Diocese and the Parishes tendered the defense of 35 of the 75 Underlying Claims to Catholic Mutual in September 2016. (Compl. ¶ 23 & Ex. 1.) At least a portion of the abuse alleged in each of the 35 claims took place during Catholic Mutual's coverage period. (*See* Compl. ¶ 23 & Ex. 1.) In October 2016, Catholic Mutual accepted the defense and indemnity of 34 of the 35 claims without a reservation of rights. (Compl. ¶¶ 24-25 & Exs. 2-3.)

Catholic Mutual alleges that Security "issued at least three insurance policies to the Diocese" that may cover the Underlying Claims: LGC 314009, covering 1964 to 1967; GLA 437394, covering 1967 to 1970; and GLA 606265, covering 1970 to 1973 but

---

[2] The Parishes "are included within the protection provided by" the certificates that Catholic Mutual issued to the Diocese. (Compl. ¶ 18.)

canceled November or December 1971. (Compl. ¶ 26.) Catholic Mutual alleges that the Diocese has been unable to locate complete copies of any of the policies, but it has located a portion of GLA 606265 and offers secondary evidence of the existence of the other two policies and their material terms and conditions. (*Id.* ¶¶ 27-29.)

Secondary evidence of the LGC 314009 policy includes a series of letters between Security and the Diocese regarding a claim within the policy's coverage period, (*id.* ¶¶ 32-33, 35 & Exs. 6-7), and a draft affidavit prepared based on those letters that was sent to an agent stating that he wrote a general liability insurance coverage for the Diocese, (Compl. ¶ 34 & Exs. 8-10). Security accepted the defense and indemnification of the claim without a reservation of rights. (Compl. ¶¶ 36 & Exs. 12.) Secondary evidence of the GLA 437394 policy and the GLA 606265 policy includes correspondence between Security and the Diocese indicating that Security agreed to defend various claims within the policies' coverage periods. (Compl. ¶¶ 39-41 & Exs. 17-23.) Security explicitly stated several times that it would honor coverage of claims from November 1967 to December 1971 and acknowledged certain policy limits during that time period. (Compl. ¶ 40 & Exs. 19-21.)

### C. ARROWOOD'S DENIAL OF COVERAGE

On May 27, 2011, the Diocese sought indemnity contribution from Arrowood, as successor to Security, for a claim alleging abuse from 1967-1969 and in 1971. (Compl. ¶ 44 & Ex. 25.) Arrowood denied that it owed defense or indemnity to the Diocese under GLA 437394 because the Diocese could not provide an entire copy of the policy or any

document that indicated the named insured, policy period, or limits of insurance. (Compl. ¶ 44, Ex. 25 at 113.) Arrowood stated that it had paid out a prior claim under GLA 437394 "in error" and that it was "unable to confirm the basis for which [Security] previously agreed to accept coverage for the Diocese" for the period 1967 to 1973. (*Id.* at 114.) Arrowood also noted that it did not have documentation of certain material terms for GLA 606265. (*Id.* at 115.) Arrowood appeared to be warning the Diocese that it would no longer honor the agreement the Diocese had with Security without additional documentation or evidence of the terms of the purported policies.

In 2016, the Diocese tendered 52 of the Underlying Claims to Arrowood, as they were purportedly covered by the Security policies, but Arrowood disputed that the Claims were covered. (Compl. ¶¶ 49-50.) Catholic Mutual alleges that "Arrowood abandoned the Diocese and refused to defend any of the Underlying Claims." (*Id.* ¶ 51 & Ex. 29.) Arrowood "agreed to cover some defense costs and provide very limited indemnity to the Diocese" for 20 of the 52 claims, (Compl. ¶ 52), all of which allege abuse in the period covered by GLA 437394 and GLA 606265, (*id.* ¶ 53 & Ex. 30). Eight of these 20 claims allege abuse in the time period covered by Security's policies and Catholic Mutual's policies ("the Overlapping Claims"). (*Id.* ¶ 55.) Arrowood maintains that this agreement was a compromise and not an admission of coverage. (Compl. ¶ 51, Ex. 29 at 132.) Arrowood's compromise agreement is subject to a reservation of rights and applies to the Diocese alone – not to the Parishes. (Compl. ¶ 54.) Arrowood has denied or refused to acknowledge any obligation whatsoever on the remaining claims. (*Id.* ¶ 56.)

## II. PROCEDURAL BACKGROUND

Catholic Mutual filed its Complaint on July 20, 2017. (Compl.) Its complaint presents an action for declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202. (*Id.* ¶ 58.) In Count One, Catholic Mutual "seeks a judicial determination that, under [Security's policies], Arrowood has a duty to defend and indemnify the Diocese and Parishes in connection with these twenty-eight claims subject to a $100,000 per occurrence limit and no aggregate limit." (*Id.* ¶ 78.) Catholic Mutual also seeks judicial declarations that the policies exist and contain certain terms and conditions, as well as costs and expenses. (*Id.*) In Count Two, Catholic Mutual seeks "a declaration that it has a right of contribution from Arrowood for a fair share of the defense costs incurred by Catholic Mutual in providing a defense of the Diocese and Parishes in connection with the Overlapping Claims." (*Id.* ¶ 84.) Catholic Mutual also seeks a judicial declaration that the policies exist and require Arrowood to defend and indemnify the Diocese in connection with the Underlying Claims, a judicial declaration that it has a right of contribution from Arrowood for defense expenses incurred in defending the Diocese and Parishes in connection with the Overlapping Claims in excess of its fair share, and costs and expenses. (*Id.*)

Arrowood filed a Motion to Dismiss for Lack of Jurisdiction Pursuant to Federal Rule of Civil Procedure 12(b)(1). (Mot. to Dismiss, Oct. 16, 2017, Docket No. 30.) Briefing followed. (Def.'s Mem. Supp. Mot. to Dismiss ("Supp. Mem."), Oct. 16, 2017, Docket No. 32; Pl.'s Opp. Mem. ("Opp. Mem."), Nov. 27, 2017, Docket No. 40; Def.'s Reply Mem. ("Reply Mem."), Dec. 11, 2017, Docket No. 41.)

# DISCUSSION

## I. STANDARD OF REVIEW

### A. 28 U.S.C. § 2201

Catholic Mutual seeks a declaratory judgment pursuant to the Declaratory Judgment Act, which states:

> In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

28 U.S.C. § 2201(a). Federal courts have jurisdiction to issue declaratory judgments only where there is an actual "case or controversy." *Marine Equip. Mgmt. Co. v. United States*, 4 F.3d 643, 646 (8th Cir. 1993).

"The test to determine whether there is an actual controversy within the meaning of the Declaratory Judgment Act is whether 'there is a substantial controversy between the parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Id.* (quoting *Caldwell v. Gurley Refining Co.*, 755 F.2d 645, 649 (8th Cir. 1985)). The jurisdiction of the federal courts "is limited by Article III of the Constitution to cases or controversies; if a plaintiff lacks standing to sue, the district court has no subject-matter jurisdiction." *ABF Freight Sys., Inc. v. Int'l Bhd. of Teamsters*, 645 F.3d 954, 958 (8th Cir. 2011).

A justiciable controversy is distinguishable from "a difference or dispute of a hypothetical or abstract character" or from a dispute that is "academic or moot." *Aetna*

*Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 240 (1937). It must be "definite and concrete, touching the legal relations of parties having adverse legal interests." *Id.* at 240-41.

    **B.**    **Federal Rule of Civil Procedure 12(b)(1)**

Arrowood's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) "challenges the Court's subject matter jurisdiction and requires the Court to examine whether it has authority to decide the claims." *Damon v. Groteboer*, 937 F. Supp. 2d 1048, 1063 (D. Minn. 2013). Federal courts have limited jurisdiction, and subject-matter jurisdiction is a threshold matter that the plaintiff must establish. *See Sheehan v. Gustafson*, 967 F.2d 1214, 1215 (8th Cir. 1992). "Whether a plaintiff has standing to sue 'is the threshold question in every federal case, determining the power of the court to entertain the suit.'" *McClain v. Am. Econ. Ins. Co.*, 424 F.3d 728, 731 (8th Cir. 2005) (quoting *Steger v. Franco, Inc.*, 228 F.3d 889, 892 (8th Cir. 2000)).

In a facial challenge to jurisdiction, "all of the factual allegations concerning jurisdiction are presumed to be true and the motion is successful if the plaintiff fails to allege an element necessary for subject matter jurisdiction." *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993). The court "determine[s] whether the asserted jurisdictional basis is patently meritless by looking to the face of the complaint and drawing all reasonable inferences in favor of the plaintiff." *Biscanin v. Merrill Lynch & Co.*, 407 F.3d 905, 907 (8th Cir. 2005) (citations omitted).

## II. SUBJECT MATTER JURISDICTION

Arrowood argues that the Court lacks subject matter jurisdiction because no actual controversy exists and Catholic Mutual lacks standing to seek coverage on behalf of its certificate holder, the Diocese. Arrowood also argues that Catholic Mutual's request for a judicial declaration regarding contribution is both premature and moot.

### A. Standing

Arrowood argues that, because Catholic Mutual "is a complete stranger to the Alleged Policies," (Supp. Mem. at 8), no legal relation – real or purported – exists between the parties. Therefore, Arrowood argues that no actual case or controversy exists and that Catholic Mutual lacks standing to seek a declaration of coverage under the alleged policies. While Minnesota law historically precluded actions by one insurer against another insurer of the same insured party, *see Iowa Nat'l Mut. Ins. Co. v. Universal Underwriters Ins. Co.*, 150 N.W.2d 233, 236-37 (Minn. 1967), the Minnesota Supreme Court overruled that precedent in *Cargill, Inc. v. Ace Am. Ins. Co.*, 784 N.W.2d 341, 354 (Minn. 2010). In *Cargill*, the Minnesota Supreme Court held that "a primary insurer that has a duty to defend, and whose policy is triggered for defense purposes, has an equitable right to seek contribution for defense costs from any other insurer who also has a duty to defend the insured, and whose policy has been triggered for defense purposes." 784 N.W.2d at 354; *see also Cont'l Cas. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa*, 940 F. Supp. 2d 898, 917-18 (D. Minn. 2013), *as amended* (Aug. 9, 2013). As a primary insurer seeking a declaratory judgment regarding Arrowood's

obligation as a co-insurer to contribute, Catholic Mutual alleges an actual case or controversy and has standing under Minnesota law.

Arrowood also argues that Minnesota law only allows for actions of contribution by "**established** primary insurers, whose liability and duty to defend under the policies at issue have been **determined**." (Reply Mem. at 4.) Not so. "The fundamental question in an equitable contribution action is precisely the question [Catholic Mutual] seeks to have determined here – does [Arrowood] owe an obligation to [the Diocese] such that [Arrowood] can be liable to [Catholic Mutual] for contribution?" *Cont'l*, 940 F. Supp. 2d at 918. To answer this question requires the Court to determine whether the Underlying Claims are covered by Arrowood's purported policies. As the Court has explained, "[t]he right to seek contribution would be meaningless if a co-insurer could stymie attempts to seek contribution by asserting it does not have a duty to defend, and then preventing the paying insurer from examining the insurance policy to challenge that assertion." *Id.* And, in order to determine contribution, the Court must determine precisely "which insurers have a duty to defend [the insured]." *Cargill*, 784 N.W.2d at 354. Therefore, Catholic Mutual alleges a case or controversy and has standing to seek determination of these questions.[3]

---

[3] Arrowood also argues that "the very existence of the Alleged Policies ha[s] not been determined" and that the Complaint "fails to identify any terms of the Alleged Policies." (Reply Mem. at 4.) Although complete copies of the policies have not been produced, Catholic Mutual has supplied supporting evidence of the policies and their terms, including acknowledgments by Arrowood's predecessor that the policies existed and acknowledgment of some of their terms. At this time, the Court need not decide whether the policies existed and what their terms were. The Court only decides that Catholic Mutual has sufficiently alleged a case and controversy.

**B.     Justiciability**

Arrowood argues that a declaratory judgment on contribution for the Overlapping Claims would be premature and "would require this Court to . . . issue an advisory opinion on a completely hypothetical set of facts." (Supp. Mem. at 8.) Arrowood argues that the Complaint fails to establish (1) common liability and (2) that Catholic Mutual paid more than its fair share of the common liability, which are the elements of a claim for contribution. (Supp. Mem. at 11 (quoting *Nuessmeier Elec., Inc. v. Weiss Mfg. Co.*, 632 N.W.2d 248, 251 (Minn. Ct. App. 2001)).) Arrowood's argument fails because it asks the Court to determine the merits of the claim at the motion to dismiss stage.

As the Court noted in *Continental*, the threshold question in a contribution claim is whether an insurer owes an insured a duty to defend. 940 F. Supp. 2d at 918.[4] Catholic Mutual asks the Court to answer that question. Furthermore, Catholic Mutual plausibly alleges that Arrowood owes the Diocese and the Parishes a duty to defend on the Overlapping Claims; thus, it plausibly alleges common liability. Common liability need not be "established" at the motion to dismiss stage.

Arrowood's liability is also a threshold question in determining whether Catholic Mutual has paid more than its fair share. Catholic Mutual alleges that it has provided a

---

[4]Arrowood's attempt to distinguish *Continental* from the present case is unavailing. Arrowood argues that *Continental* involved an interpretation and declaration of duties under insurance policies whose existence was not in dispute. But nothing in *Continental* suggests that the Court is precluded from making a threshold determination regarding the existence of a contract – and therefore the existence of a duty to defend – or from interpreting a purported contract when the complete policy is unavailable. Reading *Cargill* and *Continental* together, and in light of the secondary evidence provided by Catholic Mutual regarding the purported contracts, the Court finds that Catholic Mutual has standing to seek a judicial determination on the existence of the contract and on its terms as a predicate question to determine contribution.

defense to the Diocese for the Overlapping Claims.  It follows that, if Arrowood is liable, Catholic Mutual has paid – and will continue to pay – more than its fair share.  Should the Court determine that Arrowood is liable, a determination of contribution would not be hypothetical or premature.[5]

Arrowood also argues that a declaratory judgment on contribution would be moot because it would require the Court to "make a declaration on a matter that Arrowood has already agreed to resolve with its purported insured, the Diocese." (Supp. Mem. at 8.)  In support of this argument, Arrowood notes its "good faith compromise with the Diocese" whereby Arrowood agreed to "contribute to the necessary and reasonable defense costs" of 20 of the Underlying Claims, including the Overlapping Claims. (*Id.* at 13-14.)  But – despite Arrowood's compromise – the issue of contribution is not moot as a practical matter or as a matter of law.

Catholic Mutual alleges that "Arrowood has not agreed to provide what the Complaint alleges it owes:  Arrowood has agreed to provide only limited defense and indemnity, and only to the Diocese." (Opp. Mot. at 12.)  Thus, as a practical matter, Arrowood has not mooted the case.  Furthermore, Arrowood "expressly reserved its right to change or withdraw its agreement and seek recovery of amounts it has paid pursuant to that agreement." (*Id.*)  One important purpose of declaratory judgments is to afford the parties "relief from the uncertainty, insecurity, and controversy giving rise to the

---

[5] The Court has previously issued declaratory judgments that determined right to contribution without determining the actual dollar amount of contribution.  *Cont'l*, 940 F. Supp. 2d at 930.

proceeding." *Karsjens v. Jesson*, 6 F. Supp. 3d 958, 974 (D. Minn. 2014) (quoting *Alsager v. Dist. Ct. of Polk Cnty., Ia (Juvenile Div.),* 518 F.2d 1160, 1163–64 (8th Cir. 1975)). Arrowood's compromise does not relieve Catholic Mutual of the uncertainty and insecurity that gave rise to this proceeding.

Additionally, "[m]ere voluntary cessation of allegedly illegal conduct does not moot a case; if it did, the courts would be compelled to leave the defendant . . . free to return to his old ways." *United States v. Concentrated Phosphate Export Ass'n, Inc.*, 393 U.S. 199, 203 (1968) (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 632 (1953)). Arrowood's compromise was made with a complete reservation of rights, including the right to withdraw or seek recovery of amounts paid. Thus, as a mater of law, Arrowood has not shown that "the allegedly wrongful behavior could not reasonably be expected to recur." *Id*. at 203. Arrowood cannot moot a case by promising that it will change only some of its conduct and reserving the right to change its mind.

## CONCLUSION

Because Catholic Mutual has standing to bring this case under Minnesota law and has alleged an actual case and controversy that is neither premature nor moot, the Court will deny Arrowood's Motion to Dismiss. Catholic Mutual has standing to seek declaratory judgment for contribution under Minnesota law to determine whether Arrowood, an alleged co-insurer, owes a duty to defend. In determining whether Catholic Mutual is entitled to contribution from Arrowood, the Court must necessarily determine the threshold questions of whether the purported contracts with Arrowood

exist and whether Arrowood is liable under them.  The action is not premature because Catholic Mutual has plausibly alleged joint liability and payment of more than its fair share of costs, two issues whose merits can only be decided after the Court determines the threshold question of Arrowood's liability.  Nor is the action moot because Arrowood's good faith agreement to pay some defense costs was done under a complete reservation of rights, which neither gives Catholic Mutual certainty nor shows that Arrowood's allegedly unlawful behavior cannot reasonably be expected to reoccur.

**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendant Arrowood Indemnity Company's Motion to Dismiss [Docket No. 30] is **DENIED**.

DATED:  August 10, 2018  
at Minneapolis, Minnesota.

s/John R. Tunheim  
JOHN R. TUNHEIM  
Chief Judge  
United States District Court